UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NICKLAUS E. UHNAK | : | |
| | : | |
| v. | : | C.A. No. 08-148ML |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner, Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on April 30, 2008 seeking to reverse the decision of the Commissioner. On September 30, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On October 28, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that the Plaintiff's Motion to Reverse the Decision of the Commissioner be DENIED. (Document No. 8).

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on June 10, 2003, alleging disability as of December 30, 2001. (Tr. 58-60, 233-237).  Plaintiff's insured status for DIB expired on March 31, 2004.  (Tr. 83).  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 15, 241-246). Plaintiff requested an administrative hearing (Tr. 238) which was held on January 27, 2005 before Administrative Law Martha H. Bower ("ALJ") at which time, Plaintiff, represented by an attorney, his mother and a vocational expert appeared and testified.  (Tr. 250-292).  The ALJ issued a decision on April 20, 2005 finding that Plaintiff was not disabled. (Tr. 12-21).  The Appeals Council denied Plaintiff's request for review on April 4, 2008, (Tr. 6-9), making the ALJ's decision the final decision of the Commission.  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that (1) the ALJ's mental RFC findings are not supported by substantial evidence; (2) the ALJ erred in giving reduced weight to the opinions of the treating psychiatrist; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time period.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. <u>See</u> <u>Jackson v. Chater</u>, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. <u>Id.</u> With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. <u>Id.</u>

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

    IV.    **THE LAW**

    The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

    A.    **Treating Physicians**

    Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

    Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was twenty-five years old on the date of the ALJ's decision (Tr. 56) with a twelfth-grade education and some college courses who worked in the relevant past as a doorman and bouncer at a nightclub, a postal clerk, busboy and grocery bagger. (Tr. 75, 80, 98).  Plaintiff alleged disability due to bipolar disorder and anxiety.  (Tr. 74).

Plaintiff first sought treatment from Dr. Frederick Guggenheim, a Psychiatrist, on January 14, 2003, complaining of anxiety. (Tr. 147).  He described experiencing mood swings, but indicated that he had never suffered a serious bout of depression or psychiatric hospitalization.  Id.  On exam, Plaintiff was cooperative, made good eye contact and interacted appropriately.  (Tr. 148).  His thought processes were logical and organized, his mood was mildly dysphoric and anxious, and his affect was somewhat constricted.  Id.  He was alert and oriented and had a "good fund of knowledge, reasoning, judgement, and insight."  Id.  Dr. Guggenheim diagnosed bipolar disorder and generalized anxiety disorder, and he evaluated Plaintiff to have a Global Assessment of Functioning ("GAF") rating of 55 (moderate symptoms).  Id.  He prescribed Depakote ER and Seroquel.  Id.

-11-

In February 2003, Plaintiff returned to Dr. Guggenheim feeling better, but with "room for improvement." (Tr. 146).  His mood swings persisted but were less severe, and he rated his anxiety at 5/10.  Id.  Plaintiff continued to work part-time as a bouncer, twelve to twenty hours per week, because no other job interested him.  Id.  He felt good about having "started boxing again at the gym."  Id.  On exam, Plaintiff was cooperative and did not appear anxious.  Id.  Dr. Guggenheim considered his mood euthymic and noted that he did not say much.  Id.

In March 2003, Plaintiff was reported to be stable on medication and was involved with a vocational specialist.  (Tr. 158).  In May 2003, Plaintiff reported continued improvement in his mood shifts due to his medication but reported some anger and anxiety. (Tr. 145).  Dr. Guggenheim adjusted his medications.  Id.

Plaintiff returned to Dr. Guggenheim in July 2003.  (Tr. 144).  He felt good on his medication and was not having any side effects.  Id.  Though he complained of moderate depression and claimed to be anxious, Dr. Guggenheim observed that he was neither "fidgety" nor "threatening."  Id.  He had been fired from his job as a bouncer.  Id.  In August, Plaintiff reported brief depression, peaking at a level of 10/10, that had subsequently remitted. (Tr. 143).  Plaintiff related that he was moderately depressed and angry but admitted feeling much better when on the medications.  Id.

In August 2003, Dr. Michael Slavit, a state agency psychologist, assessed no more than moderate mental limitations. (Tr. 139-140).  He opined that Plaintiff retained the functional capacity to understand and remember three-step instructions, persist for two-hour increments throughout an eight-hour work day, sustain adequate relations with coworkers and supervisors and avoid work hazards and make routine work-related decisions independently. (Tr. 141). Although Plaintiff

reported severe symptoms, he had never experienced a major psychiatric event (such as hospitalization or a suicide attempt), handled self-care, engaged in a vigorous lifestyle and worked (at the time) twelve to twenty hours per week in a "stressful" environment.  Id.

By September 2003, Plaintiff's depression was "gradually subsiding."  (Tr. 184).  Due to Plaintiff's continuing complaints of anxiety, Dr. Guggenheim prescribed Clonazepam and increased certain other medications.  Id.

Also in September 2003, Paul Masse, a pastoral counselor, opined that Plaintiff had extreme difficulty maintaining focus and concentration, would panic around people, and could not take direction.  (Tr. 149).  He concluded that Plaintiff could not sustain full-time employment on an ongoing basis.  (Tr. 151).  In addition, he found Plaintiff to have severe mental limitations in all areas on an assessment form, except in the area of deterioration of personal habits which was moderately severe. (Tr. 152-153).  Despite the ALJ's affirmative request (Tr. 252-53, 291), Plaintiff never supplied any supporting treatment records from Mr. Masse.

In November 2003, Dr. Guggenheim recorded that Plaintiff again felt depressed and that he was "crying in the office."  (Tr. 185). Plaintiff denied suicidal ideation and expressed understanding that his depression would pass.  Id.  On this occasion, Plaintiff felt particularly depressed because his "life [was] a mess," in part because he had injured his leg in judo practice.  Id.  Dr. Guggenheim "[e]ncouraged [Plaintiff] to take his Lithium assiduously, plus all his other meds," as Plaintiff had neglected his Lithium for unknown reasons.  Id.  Dr. Guggenheim noted that Plaintiff remained very anxious and depressed.  Id.

Also in November 2003, Dr. Guggenheim circled numerous moderately severe and severe mental limitations on an assessment form and opined that Plaintiff was "too sick to work." (Tr. 179-

180). He also stated that, despite Plaintiffs use of medication, he was "unable to do anything but cry, about 1/3 of the time." (Tr. 181). Dr. Guggenheim reported that Plaintiff had suicidal ideation, severe depression and anxiety, and social phobia (Tr. 182), and he opined that Plaintiff could not sustain full-time employment on an ongoing basis. (Tr. 183).

In December 2003, Dr. Guggenheim noted that Plaintiff needed to undergo major reconstructive surgery of his left knee. (Tr. 189). Plaintiff felt demoralized because the surgery and rehabilitation would force him to "miss next semester in school," and he appeared moderately depressed. Id. His anxiety was better, however, and Dr. Guggenheim prescribed Topamax. Id. On a treatment plan review form, Dr. Guggenheim assessed a Plaintiff with a GAF of 50 and listed "employment" as a problem. (Tr. 187). Plaintiff expressed an "interest in finding suitable employment." Id.

In January 2004, Plaintiff complained to Dr. Guggenheim that he was still depressed and had a lot of racing thoughts and energy. (Tr. 190). His social anxiety had decreased, but he still avoided going places and over-analyzed things. Id. On exam, Plaintiff could walk without crutches and appeared mildly depressed but not suicidal or psychotic. Id. Dr. Guggenheim increased his Topamax and planned to increase his Lithium level if it was found to be low. Id. In March 2004, Plaintiff reported that Topamax had helped to decrease his speeding thoughts. (Tr. 191).

In April 2004, Plaintiff reported that he had "small panic attacks but not big ones." (Tr. 192). His continued improvement meant that he was able to go to public places that he could not previously, and he was not nearly as worried as he had been, though he continued to report rapidly cycling moods. Id. He reported taking a college class and that he was active using the Internet.

-14-

Id.  On exam, Plaintiff was emotionally blunted but did not appear either euphoric or depressed. Id.  Dr. Guggenheim opined that his condition was stable.  Id.

In June 2004, Plaintiff related that his left knee had considerably improved and that he was taking two summer school classes at the community college.  (Tr. 193).  He reportedly was unable to attend college full-time due to concentration difficulties, and his depression was rated at a 7/10. Id.

In an August 2004 treatment plan review, Dr. Guggenheim rated Plaintiff's GAF at 50 and concluded that treatment had proven effective.  (Tr. 194).  He indicated that Plaintiff continued to have rapidly cycling moods and symptoms of anxiety and difficulty concentrating, but that he had never experienced severe depression or full mania.  Id.  Plaintiff enjoyed taking summer school classes, despite his concerns over his ability to concentrate, and he again indicated interest in finding suitable employment.  Id.  Also in August 2004, Plaintiff reported that his depression was at a level of 2/10, he thought he may be becoming more manic, and he felt "really good" about going back to community college in the fall.  (Tr. 196).

In October 2004, Plaintiff rated his depression at 7.5/10.  (Tr. 197).  He was generally no longer anxious, though he felt his social anxiety increased to 7.5/10 when he was required to do something performance-oriented in public.  Id.  Dr. Guggenheim also noted that Plaintiff's mood swings typically occurred at night.  Id.  On exam, Plaintiff appeared only mildly anxious and depressed, and Dr. Guggenheim commented that "most of the time he is quite comfortable."  Id. Plaintiff continued to attend college part-time and appreciated the benefits of his medication, which did not cause any side effects.  Id.

Also in October 2004, Dr. Clifford Gordon, a state agency psychologist, assessed no more than moderate mental limitations (Tr. 173-174) and concluded that Plaintiff could understand and remember basic, routine, repetitive tasks as well as complex, abstract tasks; could complete routine, repetitive tasks in two hour blocks of time over an eight-hour day; would have difficulty with team or public tasks; and could adapt to ordinary change in the work place and follow through on routine, repetitive tasks. (Tr. 178). In support, Dr. Gordon noted that Plaintiff had attended college; that his treatment history suggested little cognitive difficulty; that Plaintiff read sports magazines, lifted weights, drove, and handled his own money management; that he had a girlfriend and went out to dinner; and that he was self-sufficient with regard to his activities of daily living. Id.

In December 2004, Plaintiff rated his depression at 3/10 and reported no hypomania at that time. (Tr. 198). Plaintiff's anxiety level was "nonexistent," but he reported that he could become quite anxious "if he has to do something." Id. Plaintiff expressed gratitude that his medication allowed him to feel better and attend college, and he indicated his intent to pursue a career as a paralegal. Id. On exam, Plaintiff appeared "mildly anxious and minimally depressed." (Tr. 199). Dr. Guggenheim reported that his medication allowed him to function at a near-normal level. Id. Plaintiff informed Dr. Guggenheim that he felt better "than he [had] felt in the past seven years." (Tr. 198).

In January 2005, Dr. Guggenheim completed a functional capacity questionnaire in which he circled responses indicating that Plaintiff had various moderately severe and severe mental limitations, which he opined had persisted for the past seven years. (Tr. 200-201). Dr. Guggenheim also completed a questionnaire in which he indicated that Plaintiff had a rapid-cycle bipolar condition that caused him to be so irritable or depressed at times that he could not sustain full-time

employment. (Tr. 202). Dr. Guggenheim mentioned Plaintiff's panic attacks, deep depression and inability to go out. (Tr. 202-203).

In a February 8, 2005 letter addressed "To whom it may concern," Mr. Masse opined that Plaintiff was incapable of sustained employment, which would demand quick responses and cognitive spontaneity. (Tr. 117). He indicated that Plaintiff would be "unable to complete any required task in employment" and could not maintain attendance. Id. (emphasis added).

### A. The ALJ's Mental RFC Findings Are Supported by Substantial Evidence

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ determined that Plaintiff's bipolar disorder was a "severe" impairment (20 C.F.R. §§ 404.1520 and 416.920) after January 14, 2003. (Tr. 16). The ALJ determined that Plaintiff had no exertional limitations but moderate non-exertional limitations in concentration/attention, social functioning and the ability to cope with customary work pressures. (Tr. 18). Plaintiff was also restricted from hazardous machinery and unprotected heights due to his medications. Id. Based on this RFC and testimony from a VE, the ALJ determined that there is a significant number of light and sedentary jobs in the regional economy to which Plaintiff could make a "vocational adjustment." (Tr. 21).

Plaintiff takes issue with the ALJ's evaluation of the medical evidence. In assessing Plaintiff's RFC, the ALJ rejected Dr. Guggenheim's opinions of total disability as "inconsistent with the actual treatment notes" and adopted the opinion of Dr. Slavit who found moderate limitations in social functioning and in concentration, persistence and pace. (Tr. 18; Exs. 1F, 6F and 8F). Plaintiff has shown no error.

Because a treating physician, such as Dr. Guggenheim, is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally

-17-

entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

The ALJ adequately explained her reasoning for discounting Dr. Guggenheim's total disability opinion and, since such reasons are supported by the record, they are entitled to deference. The ALJ accurately pointed out that Dr. Guggenheim's total disability opinions (Exs. 6F and 8F) were "inconsistent with the actual treatment notes (Exs. 2F and 7F), which have shown an increase in functioning with regular treatment and medication during the period from January 23, 2003 through the present."  (Tr. 18).  For instance, in October and December of 2004, Dr. Guggenheim reported significant improvement in Plaintiff's condition.  (Tr. 197-199). He noted that Plaintiff was "mildly anxious and depressed" and mostly "quite comfortable." (Tr. 197).  Plaintiff "appreciate[d] the benefits of [his] medication" and reported no side effects.  Id.  He also was taking college classes and was "really gratified that the medications now allow him to feel better than he has felt in the past seven years, allowing him to go back to college which is very important to him."  (Tr. 198).  Dr. Guggenheim further reported that Plaintiff's medication "allow[ed] him to function at a near normal

level." (Tr. 199). These treatment notes contradict Dr. Guggenheim's opinion rendered a few weeks later that Plaintiff had severe symptoms and could not sustain any employment. (Ex. 8F). Further, in his first total disability opinion, Dr. Guggenheim supported his finding by noting that Plaintiff had "suicidal ideation." (Tr. 182). However, a close review of Dr. Guggenheim's treatment records (Exs. 2F, 4F and 7F) consistently report that Plaintiff was never suicidal.

Plaintiff alleged a disability onset date of December 30, 2001 but worked as a nightclub door person/bouncer until July of 2003. (Tr. 58, 144, 258). He also returned to community college and was taking an increasing number of credits from the fall 2003 through spring 2005 and had a cumulative Grade Point Average of 3.31. (Tr. 118-119). The ALJ also did not err in considering this evidence in assessing the allegations of total disability.

Plaintiff also argues that the ALJ erred by relying on outdated medical opinions from the state agency Psychologists – Dr. Slavit and Dr. Gordon (Exs. 1F and 5F). See Document No. 8 at pp. 10-11. Plaintiff contends that the state agency Psychologists only reviewed a limited portion of the record and that the ALJ should have either requested updated reports or utilized a medical expert to review the complete record.

Dr. Slavit issued his report on August 14, 2003 and reviewed Dr. Guggenheim's treatment records through May 28, 2003. (Tr. 141).[1] The ALJ held a hearing on January 27, 2005 which was approximately sixteen months after the date of Dr. Slavit's report. While the passage of time by itself does not render reliance on a medical report erroneous, this Court has ordered remand in past

---

[1] Dr. Gordon issued his report two months later on October 21, 2003 and thus had access to more of the chronological record. (Ex. 5F). Dr. Gordon also assessed mild limitations in activities of daily living, and moderate limitations in social functioning and concentration, persistence or pace. (Tr. 169). The only area where he differed from Dr. Slavit was in finding one or two episodes of decompensation where Dr. Slavit found none. (Tr. 134, 169).

cases where substantial changes in the medical history of a claimant would reasonably call into question the continuing reliability of early medical opinions. See, e.g., St. Pierre v. Barnhart, No. 06-095LDA, Memorandum and Order (D.R.I. March 15, 2007) (ALJ erred by giving substantial weight to "early" state agency physician opinions where claimant was struck by a car and injured thereafter and had substantial additional medical and psychological treatments). See also Alcantara v. Astrue, No. 07-1056, 2007 WL 4328148 at *1 (1st Cir. Dec. 12, 2007) (per curiam) (ALJ erred, in part, by relying on the "early" opinion of a non-examining psychologist who opined before the death of claimant's father and thus could not have adequately considered the resulting deterioration in claimant's mental condition).

This is not such a case.  In fact, as accurately outlined by the ALJ, Plaintiff's condition stabilized over time.  In a report dated December 17, 2004, Dr. Guggenheim stated that Plaintiff was "really gratified that the medications now allow him to feel better than he has felt in the past seven years, allowing him to go back to college which is very important to him."  (Tr. 198).  He also reported that the medications allowed Plaintiff to function "at a near normal level despite the fact that he has both rapid cycling and ultra rapid cycling" due to his bipolar disorder.  (Tr. 198-199). He was assessed as "mildly anxious and minimally depressed."  (Tr. 199).  The records after Dr. Slavit's opinion do identify a temporary increase in Plaintiff's depression after losing a part-time job which "gradually subsid[ed]."  (Tr. 143-144, 184, 189).  He also injured his left knee and required surgery which temporarily impacted his mental status.  (Tr. 185, 189-193).  However, as noted above, the later treatment notes from Dr. Guggenheim in the weeks leading up to the ALJ hearing were very positive in terms of Plaintiff's condition.  (Tr. 197-199).

Plaintiff contests the weights given to the varying medical evaluations and opinions by the ALJ and essentially asks this court to re-weigh the medical evidence.  However, it is not this Court's role to re-weigh conflicting evidence.  The issue is not whether this Court would have reached the same conclusion had it been responsible for reviewing this case in the first instance.  Rather, the issue is whether the ALJ's RFC finding is supported by substantial evidence and legally correct. See Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1, 4 (1st Cir. 1987) ("it is the [ALJ's] province to resolve conflicts in the medical evidence.").  In this case, the ALJ's treatment of the various medical opinions in the record is supported by substantial evidence and thus is entitled to deference.

**B.      The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

The ALJ concluded that Plaintiff's "allegations of a complete and total disability are not fully credible in light of [his] history of work after onset, his return to school after onset, his recreational activities, and evidence in the records of the treating psychiatrist." (Tr. 17).  The ALJ supported his conclusion with references to evidence of record.  Id.

Plaintiff contends that the ALJ's reasoning is "flawed" because Plaintiff's activities were not inconsistent with his bipolar disorder or his disability.  (Document No. 8 at p. 13).  Plaintiff suggests that this resulted from the ALJ's misunderstanding of "rapid cycling bipolar disorder."  Id. at p. 14. In support, Plaintiff points to notes of Dr. Guggenheim contained on an emotional impairment questionnaire he completed on January 11, 2005 at the request of Plaintiff's counsel.  (Tr. 202-203). However, as noted above in Section V(A), Dr. Guggenheim reported in his treatment notes on December 17, 2004 that Plaintiff had no medication side effects and was able to function at a "near normal level despite the fact that he has both rapid cycling and ultra rapid cycling."  (Tr. 198-199). Also, Dr. Slavit assessed only moderate to mild limitations in a report in which he specifically notes

the existence of "ultra rapid mood shifts" as reported by Dr. Guggenheim. (Tr. 134, 137). Rather than misunderstanding Plaintiff's diagnosed condition, the ALJ reasonably assessed Plaintiff's functional capacity and credibility, in part, based on this medical evidence. The ALJ also properly considered Plaintiff's ability to sustain employment, go to school and engage in some recreational activities.

Plaintiff has not shown any error in the ALJ's credibility evaluation. Reasonable minds could differ as to the interpretation of the factors considered by the ALJ. However, since the ALJ's interpretation of Plaintiff's work and school history, recreational activities and the improvement noted in his treatment records is supported by the record, such interpretation is entitled to deference and supports the ALJ's credibility determination.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED, that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED and that final judgment enter for the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

   /s/ Lincoln D. Almond

LINCOLN D. ALMOND
United States Magistrate Judge
January 15, 2009